KAREN P. HEWITT
United States Attorney
WILLIAM A. HALL, JR.
Assistant U.S. Attorney
California State Bar No. Pending
United States Attorney's Office
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-7046/(619) 235-2757 (Fax)
Email: william.a.hall@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　Plaintiff,<br><br>　　v.<br><br>LUIS ARMANDO PRADO-FRANQUEZ,<br><br>　　　　　　　　Defendant(s). | Criminal Case No. 07CR3212-LAB<br><br>DATE:　　February 11, 2008<br>TIME:　　2:00 p.m.<br>Before Honorable Larry A. Burns<br><br>UNITED STATES' STATEMENT OF FACTS AND MEMORANDUM OF POINTS AND AUTHORITIES |

**I**

**STATEMENT OF THE CASE**

The Defendant, Luis Armando Prado-Franquez (hereinafter "Defendant"), was charged by a grand jury on November 28, 2007, with violating 8 U.S.C. § 1326, deported alien found in the United States. Defendant was arraigned on the Indictment on November 29, 2007, and entered a plea of not guilty.

**II**

**STATEMENT OF FACTS**

Defendant was apprehended on the morning of October 29, 2007, by a Border Patrol Agent ("BPA") five miles north of the United States/Mexico International Boundary and approximately twelve miles east of the Otay Mesa, California Port of Entry. There, at approximately 4:00 a.m

3

1 that day, a BPA responded to a seismic intrusion sensor activation and arrived to the area. He
2 followed footprints on a trail that is only used by illegal aliens to further their entry into the United
3 States. After approximately twenty-five minutes, the BPA observed eleven individuals walking on
4 the trail in front of him. The BPA caught up to the group of eleven and identified himself; three
5 of the eleven individuals fled and were not caught. The BPA individually questioned the
6 remaining eight individuals, one of which was Defendant, concerning their citizenship. There,
7 Defendant admitted that he was a citizen of Mexico with no documents entitling him to enter or
8 remain in the United States.

9       Defendant was transported to the Brown Field Border Patrol Station's processing center.
10 At the center, BPAs used Defendant's fingerprints to perform a computerized check of Defendant's
11 criminal and immigration history. Soon thereafter, Defendant was advised of his <u>Miranda</u> rights
12 and stated that he understood them and was willing to answer questions without the presence of
13 an attorney. Defendant admitted to being a citizen and national of Mexico without any
14 immigration documents allowing him to enter or remain in the United States legally. He further
15 admitted that he has been previously removed from the United States, stated that he entered the
16 United States by walking through the mountains, and admitted that he has never applied for
17 permission to re-enter the United States since his removal.

18       Preliminary criminal history reports show that Defendant has felony convictions in
19 California. Arising out of one incident, Defendant was convicted in 1994 in Los Angeles of
20 Attempted Murder, in violation of Cal. PC § 187 and 664; Assault With a Deadly Weapon, in
21 violation of Cal. PC § 245(A)(1); and Robbery, in violation of Cal. PC § 211. He was sentenced
22 to 23 years incarceration. Defendant also has a prior misdemeanor conviction.

23       Defendant's was administratively removed to Mexico on December 27, 2006.

24 //
25 //
26 //
27
28     4

## III

## MEMORANDUM OF POINTS AND AUTHORITIES

### A. THE COURT SHOULD EXCLUDE WITNESSES DURING TRIAL WITH THE EXCEPTION OF THE GOVERNMENT'S CASE AGENT

Under Federal Rule of Evidence 615(3), "a person whose presence is shown by a party to be essential to the presentation of the party's cause" should not be ordered excluded from the court during trial. The case agent in the present matter has been critical in moving the investigation forward to this point and is considered by the United States to be an integral part of the trial team. The United States requests that Defendant's testifying witnesses be excluded during trial pursuant to Fed. R. Evid. 615.

### B. DEFENDANT SHOULD BE PROHIBITED FROM ARGUING PUNISHMENT, EDUCATION, HEALTH, AGE, FAMILY CIRCUMSTANCES, AND FINANCES TO THE JURY

Defense counsel may wish to raise potential penalties Defendant faces if convicted. Information about penalty and punishment draws the attention of the jury away from their chief function as the sole judges of the facts, opens the door to compromised verdicts, and confuses the issues to be decided. United States v. Olano, 62 F.3d 1180, 1202 (9th Cir. 1995). In federal court, the jury is not permitted to consider punishment in deciding whether the United States has proved its case against the defendant beyond a reasonable doubt. 9th Cir. Crim. Jury Instr. §7.4 (2003). Any such argument or reference would be an improper attempt to have the jury unduly influenced by sympathy for the defendant and prejudiced against the government. See 9th Cir. Jury Inst. § 3.1 (2000). Therefore, the United States hereby moves *in limine* for the Court to order defense counsel not to mention any penalty or punishment to the jury or to solicit testimony regarding the same.

Likewise, the defense should be prohibited from making reference to or arguing about Defendant's education, health, age, family circumstances, and finances. Defendant may attempt to introduce evidence designed to improperly arouse the sympathy of the jury, such as evidence

of his age or personal background. The court should preclude Defendant from presenting such evidence under Federal Rules of Evidence 401, 402, and 403.

Testimony about Defendant's education, health, age, family circumstances, and finances are patently irrelevant to the issues in this case. Fed. R. Evid. 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 402 states the evidence "which is not relevant is not admissible." Testimony about Defendant's age and personal background are of no consequence to the determination of any essential facts in this case. Likewise, a defendant's right to testify is not absolute. That right does not authorize a defendant to present irrelevant testimony. See United States v. Adams, 56 F.3d 737 (7th Cir. 1995) (proper to exclude video of defendant's children opening gifts on Christmas because video would only develop sympathy for accused and would not establish defendant's whereabouts two days earlier).

Furthermore, the introduction of such evidence would violate Fed. R. Evid. 403. That rule allows a court to exclude relevant evidence where the danger of unfair prejudice or confusion of the issues outweighs the probative value of such evidence. A trial court has "wide latitude" to exclude such prejudicial or confusing evidence. See United States v. Saenz, 179 F.3d 686, 689 (9th Cir. 1999). The admission of testimony about Defendant's education, health, age, and finances will tend "to induc[e] decisions on a purely emotional basis . . ." in violation of Fed. R. Evid. 403. See Fed. R. Evid. 403 Advisory Committee Notes; United States v. Ellis, 147 F.3d 1131, 1135 (9th Cir. 1998). Juries should not be influenced by sympathy. 9th Cir. Crim. Jury Instr. § 3.1 (2003).

Thus, the government moves *in limine* for the court to order defense counsel not to introduce such testimony from Defendant or from any witnesses.

//

//

### C. THE COURT SHOULD PRECLUDE TESTIMONY OF CHARACTER WITNESSES

In introducing positive character evidence, a defendant must restrict himself to evidence regarding "law-abidingness" and honesty. A defendant may not introduce evidence concerning specific instances of good conduct, lack of a prior record, or propensity to engage in specific bad acts such as drug smuggling or distribution. United States v. Hedgecorth, 873 F.2d 1307, 1313 (9th Cir. 1987) ("[W]hile a defendant may show a characteristic for lawfulness through opinion or reputation testimony, evidence of specific acts is generally inadmissible.") (citations omitted); United States v. Barry, 814 F.2d 1400, 1403 (9th Cir. 1987); Government of Virgin Islands v. Grant, 775 F.2d 508, 512 (3d Cir. 1985) ("[T]estimony that one has never been arrested is especially weak character evidence.").

Any character evidence Defendant seeks to introduce at trial, therefore, should be limited to evidence regarding his law-abidingness and honesty. Character evidence beyond the scope of these two traits would be inappropriate.

### D. THE COURT SHOULD PRECLUDE EVIDENCE OF DURESS OR NECESSITY

Defendant should be precluded from presenting evidence or argument that he entered the United States due to duress or necessity. Courts have specifically approved the pretrial exclusion of evidence relating to a legally insufficient duress defense on numerous occasions. See United States v. Bailey, 444 U.S. 394 (1980) (addressing duress); United States v. Moreno, 102 F.3d 994, 997 (9th Cir. 1996), cert. denied, 522 U.S. 826 (1997) (addressing duress). Similarly, a district court may preclude a necessity defense where "the evidence, as described in the defendant's offer of proof, is insufficient as a matter of law to support the proffered defense." United States v. Schoon, 971 F.2d 193, 195 (9th Cir. 1992).

In order to rely on a defense of duress, Defendant must establish a *prima facie* case that:

(1) Defendant committed the crime charged because of an immediate threat of death or serious bodily harm;

7

1   (2) Defendant had a well-grounded fear that the threat would be carried out; and

2   (3) There was no reasonable opportunity to escape the threatened harm.

United States v. Bailey, 444 U.S. 394, 410-11 (1980); Moreno, 102 F.3d at 997. If Defendant fails to make a threshold showing as to each and every element of the defense, defense counsel should not burden the jury with comments relating to such a defense. See, e.g., Bailey, 444 U.S. at 416.

A defendant must establish the existence of four elements to be entitled to a necessity defense:

(1) that he was faced with a choice of evils and chose the lesser evil;

(2) that he acted to prevent imminent harm;

(3) that he reasonably anticipated a causal relationship between his conduct and the harm to be avoided; and

(4) that there was no other legal alternatives to violating the law.

See Schoon, 971 F.2d at 195; United States v. Dorrell, 758 F.2d 427, 430-31 (9th Cir. 1985). A court may preclude invocation of the defense if "proof is deficient with regard to any of the four elements." See Schoon, 971 F.2d at 195.

The United States hereby moves for an evidentiary ruling precluding defense counsel from making any comments during the opening statement or the case-in-chief that relate to any purported defense of "duress" or "coercion" or "necessity" unless Defendant makes a prima facie showing satisfying each and every element of the defense. The United States respectfully requests that the Court rule on this issue prior to opening statements to avoid the prejudice, confusion, and invitation for jury nullification that would result from such comments.

**E.   THE COURT SHOULD PRECLUDE EXPERT TESTIMONY BY DEFENSE WITNESSES**

Defendant must disclose written summaries of testimony that Defendant intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence as evidence at trial. The summaries are to describe the witness's opinions, the bases and reasons for those opinions, and the witness's

qualifications. As of the date of the filing of these motions, Defendant has provided neither notice of any expert witness, nor any reports by expert witnesses. Accordingly, Defendant should not be permitted to introduce any expert testimony if he fails to disclose such information prior to trial.

If the Court determines that Defendant may introduce expert testimony, the United States requests a hearing to determine this expert's qualifications and relevance of the expert's testimony pursuant to Fed. R. Evid. 702 and Kumho Tire Co. v. Carmichael, 526 U.S. 137, 150 (1999). See United States v. Rincon, 11 F.3d 922 (9th Cir. 1993) (affirming the district court's decision to not admit the defendant's proffered expert testimony because there had been no showing that the proposed testimony related to an area that was recognized as a science or that the proposed testimony would assist the jury in understanding the case); see also United States v. Hankey, 203 F.3d 1160, 1167 (9th Cir.), cert. denied, 530 U.S. 1268 (2000).

**F.   THE COURT SHOULD PROHIBIT REFERENCE TO WHY DEFENDANT REENTERED THE UNITED STATES**

Defendant may attempt to offer evidence of the reason for his reentry, or alternatively, his belief that he was entitled to do so. Defendant may also attempt to offer evidence of the reason for his being in the United States, or alternatively, his belief that he was entitled to be here. The Court should preclude him from doing so. Evidence of *why* Defendant violated Section 1326 is patently irrelevant to the question of *whether* he did so – the only material issue in this case.

Federal Rule of Evidence 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Federal Rule of Evidence 402 states that evidence "which is not relevant is not admissible." Here, the reason why Defendant reentered the United States, and any belief that he was justified in doing so, is irrelevant to whether he violated Section 1326. Likewise, the reason why Defendant was in the United States, and his belief that he was justified in being here, is irrelevant.

United States v. Komisaruk, 885 F.2d 490 (9th Cir. 1980), is illustrative. There, Komisaruk was convicted of willfully damaging government property by vandalizing an Air Force computer. Id. at 491. On appeal, she argued that the district court erred in granting the government's motions *in limine* to preclude her from introducing her "political, religious, or moral beliefs" at trial. Id. at 492. In particular, she argued that she was entitled to introduce evidence of her anti-nuclear war views, her belief that the Air Force computer was illegal under international law, and that she was otherwise morally and legally justified in her actions. Id. at 492-93. The district court held that her "personal disagreement with national defense policies could not be used to establish a legal justification for violating federal law nor as a negative defense to the government's proof of the elements of the charged crime," and the Ninth Circuit affirmed. Id. at 492. Similarly here, the reason why Defendant reentered the United States and his belief that he was entitled to do so, and the reason why he was in the United States and his belief that he was entitled to be here, are irrelevant to any fact at issue in this case.

### G. THE COURT SHOULD PROHIBIT REFERENCE TO PRIOR RESIDENCY

If Defendant seeks to introduce evidence at trial of any former residence in the United States, legal or illegal, the Court should preclude him from doing so. Such evidence is not only prejudicial, but irrelevant and contrary to Congressional intent.

In United States v. Ibarra, 3 F.3d 1333, 1334 (9th Cir. 1993), the district court granted the United States' motion *in limine* to preclude Ibarra from introducing "evidence of his prior legal status in the United States, and the citizenship of his wife, mother and children" in a section 1326 prosecution. Id., overruled on limited and unrelated grounds by United States v. Alvarado-Delgado, 98 F.3d 492, 493 (9th Cir. 1996). Ibarra appealed, and the Ninth Circuit affirmed, reasoning that, because Ibarra had failed to demonstrate how the evidence could possibly affect the issue of his alienage, the district court properly excluded it as irrelevant. Id.

Similarly, in United States v. Serna-Vargas, 917 F. Supp. 711 (C.D. Cal. 1996), the defendant filed a motion *in limine* to introduce evidence of what she termed "de facto" citizenship

as an affirmative defense in a Section 1326 prosecution. Id. at 711. Specifically, she sought to introduce evidence of: (1) involuntariness of initial residence; (2) continuous residency since childhood; (3) fluency in the English language; and (4) legal residence of immediate family members. Id. at 712.

The court denied the motion, noting that "none of these elements are relevant to the elements that are required for conviction under §1326." Id. The court also noted that admission of the evidence would run "contrary to the intent of Congress." Id. In particular, the court stated that, under Section 212 of the Immigration and Naturalization Act of 1952, codified at 8 U.S.C. § 1182(c), the Attorney General may exercise his discretion not to deport an otherwise deportable alien, if the alien has lived in the United States for 7 years. Id. at 712-13. The factors which the defendant relied upon to establish her "de facto" citizenship, the court noted, are "among the factors the Attorney General considers in deciding whether to exercise this discretion." Id. at 713.

Thus, the court reasoned, "the factors that [the defendant] now seeks to present to the jury are ones that she could have presented the first time she was deported." Id. Therefore, the court held, "[a]llowing her to present the defense now would run contrary to Congress' intent." Id. In particular, "under the scheme envisioned by Congress, an alien facing deportation may present evidence of positive equities only to administrative and Article III judges, *and not to juries*." Id. (emphasis added).

**H.    THE COURT SHOULD ADMIT A-FILE DOCUMENTS**

    **1.    The Documents are Admissible as Public or Business Records**

The government intends to offer documents from the Alien Registration File, or "A-File," that correspond to Defendant's name and A-number in order to establish Defendant's alienage and prior removal as well as the lack of documentation showing that when he was found in the United States, Defendant had not sought or obtained authorization from the Secretary of the Department of Homeland Security. The United States will set forth with specificity the documents it intends to introduce in its trial memorandum, to be filed later this week. These documents are self-

11

authenticating "public records," Fed. R. Evid. 803(8)(B), or, alternatively, "business records" under Fed. R. Evid. 803(6), and should be admitted.

The Ninth Circuit addressed the admissibility of A-File documents in <u>United States v. Loyola-Dominguez</u>, 125 F.3d 1315 (9th Cir. 1997). There, Loyola-Dominguez appealed his §1326 conviction, arguing, in part, that the district court erred in admitting at trial certain records from his "A-File." <u>Id.</u> at 1317. The district court had admitted: (1) a warrant of deportation; (2) a prior warrant for the defendant's arrest; (3) a prior deportation order; and (4) a prior warrant of deportation. The defendant in <u>Loyola-Dominguez</u> argued that admission of the documents violated the rule against hearsay, and denied him his Sixth Amendment right to confront witnesses. The Ninth Circuit rejected his arguments, holding that the documents were properly admitted as public records. <u>Id.</u> at 1318. The court first noted that documents from a defendant's immigration file, although "made by law enforcement agents, . . . reflect only 'ministerial, objective observation[s]' and do not implicate the concerns animating the law enforcement exception to the public records exception." <u>Id.</u> (quoting <u>United States v. Hernandez-Rojas</u>, 617 F.2d 533, 534-35 (9th Cir. 1980)). The court also held that such documents are self-authenticating and, therefore, do not require an independent foundation. <u>Id.</u>

Even prior to <u>Loyola-Dominguez</u>, courts in this Circuit consistently held that documents from a defendant's A-File are admissible in a section 1326 prosecution to establish the defendant's alienage and prior deportation. <u>See</u> <u>United States v. Mateo-Mendez</u>, 215 F.3d 1039, 1042-45 (9th Cir. 2000) (district court properly admitted certificate of nonexistence); <u>United States v. Contreras</u>, 63 F.3d 852, 857-58 (9th Cir. 1995) (district court properly admitted warrant of deportation, deportation order and deportation hearing transcript); <u>United States v. Hernandez-Rojas</u>, 617 F.2d at 535 (district court properly admitted warrant of deportation as public record); <u>United States v. Dekermenjian</u>, 508 F.2d 812, 814 n.1 (9th Cir. 1974) (district court properly admitted "certain records and memoranda of the Immigration and Naturalization Service" as business records, noting

1  that records would also be admissible as public records); United States v. Mendoza-Torres, 285 F. Supp. 629, 631 (D. Ariz. 1968) (admitting warrant of deportation).

### 2. The Court Should Admit the CNR

At trial, the United States may introduce a Certificate of Nonexistence of Record ("CNR"), stating that there is no record of Defendant's having received consent to reenter the United States. As the Ninth Circuit recently held, a CNR is not "testimonial" within the meaning of Crawford v. Washington, 124 S. Ct. 1354 (2004), and may be admitted without violating the Confrontation Clause. See United States v. Cervantes-Flores, 421 F.3d 825, 831-33 (9th Cir. 2005).

## I. THE COURT SHOULD ADMIT EXPERT TESTIMONY

If specialized knowledge will assist the jury in understanding the evidence or determining a fact in issue, a qualified expert witness may provide opinion testimony on the issue in question. Fed. R. Evid. 702. Whether expert testimony is helpful to the jury is left to the sound discretion of the trial judge. See United States v. Alonso, 48 F.3d 1536, 1539 (9th Cir. 1995); United States v. Lennick, 18 F.3d 814, 821 (9th Cir. 1994). An expert's opinion may be based on hearsay or facts not in evidence where the facts or data relied upon are of the type reasonably relied upon by experts in the field. Fed. R. Evid. 703. In addition, an expert may provide opinion testimony even if the testimony embraces an ultimate issue to be decided by the trier-of-fact. Fed. R. Evid. 704.

In this case, the government intends to offer testimony of fingerprint expert Lisa DiMeo to identify Defendant as the person who was previously deported. Expert testimony from a trained fingerprint examiner will certainly help the jury resolve questions about Defendant's identity and whether he has illegally re-entered the United States after being previously deported. Accordingly, the Court should admit the testimony of the government's fingerprint expert.

In an abundance of caution, the government also will qualify its A-File custodian, Sean Braud, as an expert in the process of removing aliens from the United States. Agent Braud's testimony will help the jury understand this process and the documents that are generated in connection with it.

**J.    THE COURT SHOULD PRECLUDE DEFENDANT FROM ARGUING PERMISSION TO REENTER BASED UPON WARNING TO ALIEN DEPORTED**

The Court should preclude any argument that Defendant believed he was not required to obtain the permission from the Attorney General or his designated successor the Secretary of the Department of Homeland Security prior to reentry into the United States or that Defendant believed he had permission to enter the United States based on any confusion or alleged error in the execution of the Warning to Alien Ordered Removed or Deported or statements made by an immigration judge at a removal hearing. See United States v. Ramirez-Valencia, 202 F.3d 1106, 1109-10 (9th Cir. 2000) (holding that such a claim is legally insufficient and any such argument improper).

**K.    THE COURT SHOULD PROHIBIT EXAMINATION OR REFERENCE TO ALLEGED DOCUMENT DESTRUCTION AND POOR RECORD KEEPING**

The United States seeks to preclude Defendant from making reference or eliciting testimony regarding the record keeping or access to information and records of the former Immigration and Naturalization Services ("INS"), now the Department of Homeland Security. Specifically, the United States seeks to preclude reference to argument that: (1) INS computers are not fully interactive with other federal agencies' computers; (2) over 2 million documents filed by immigrants have been lost or forgotten; (3) other federal agencies have the ability and authority to apply for an immigrant to come into the United States; and (4) the custodian of the A-File never checked with other federal agencies to inquire about documents relating to Defendant. Such argument is irrelevant based upon the facts of this case as there has been no proffer or mention by Defendant that he ever made application to seek reentry after deportation. See United States v. Rodriguez-Rodriguez, 364 F.3d 1142 (9th Cir. 2004) (affirming District Court Judge Lorenz's rulings to deny such testimony in a §1326 "found in" case with similar facts).

In Rodriguez-Rodriguez, the Ninth Circuit held that any such testimony or cross examination seeking to elicit such testimony is properly barred as irrelevant. Id. at 1146. The

14

1   Ninth Circuit explicitly rejected defense counsel's claim that the District Court's exclusion of the
2   anticipated testimony violates the Confrontation Clause. Instead, it declared that "none of the that
3   information is relevant on the facts of this case, because it is uncontested that Rodriguez never
4   made any application to the INS or any other federal agency." Thus, absent at a minimum a proffer
5   that Defendant had in fact applied for or obtained permission to enter or remain in the United
6   States in this instant case, any such line of inquiry on cross examination or on direct testimony is
7   irrelevant and properly excludable.

8   Additionally, the United States seeks to preclude reference to shredding of immigration
9   documents by a (former) INS contractor as set forth in United States v. Randall, et al., Criminal
10  Case No. 03CR0026-AHS (C.D. Cal. 2003) unless Defendant testifies or offers evidence that: (1)
11  he did in fact apply for permission to reenter the United States from the Attorney General, or his
12  designated successor, the Secretary of the Department of Homeland Security; and (2) that such a
13  document would have been stored at that particular facility where the shredding occurred in the
14  Randall case. Any reference of document destruction is irrelevant and unfairly prejudicial unless
15  there is some evidence offered by Defendant at trial that he did in fact seek permission to reenter
16  the United States. See Fed. R. Evid. 401-403. Moreover, even if Defendant offers evidence that
17  he did apply, there must be some showing that his application would have been stored at the
18  facility which is the subject of the Randall case during the time of the alleged shredding of the
19  documents. Otherwise, it is immaterial and irrelevant whether a contractor of (former) INS
20  destroyed documents at the INS California Service Center in Laguna Niguel, California because
21  Defendant did not apply, or if he did apply, his application was not stored there, and therefore,
22  could not have been effected. Such testimony as well as any such statements asserted in
23  Defendant's opening or closing arguments would be unfairly prejudicial to the United States and
24  likely to cause confusion to the jury because such unsupported blanket allegations or references
25  of document destruction or poor record keeping without any showing by Defendant that he applied

28  15

1   for permission to reenter would be misleading. Accordingly, the United States seeks an order
2   precluding such argument.

3   **L.    THE COURT SHOULD ADMIT RULE 404(b) / 609 EVIDENCE**

4   In a letter dated January 24, 2008, the United States notified of its intent to use his prior
5   1994 convictions for impeachment purposes under Rule 609. The United States will also use
6   Defendant's 1994 conviction should Defendant contend that he was not subject to deportation or
7   that he had permission to reenter the United States.[1/]  If Defendant testifies at trial, he will place
8   his credibility squarely at issue, and the United States should be able to inquire about his recent
9   conviction.

10  Federal Rule of Evidence 609(a) provides in pertinent part: "For purposes of attacking the
11  credibility of a witness, (1) evidence that a witness other than an accused has been convicted of
12  a crime shall be admitted, subject to Rule 403, if the crime was punishable by death or
13  imprisonment in excess of one year under the law under which the witness was convicted, and
14  evidence that an accused has been convicted of such a crime shall be admitted if the court
15  determines that the probative value of admitting this evidence outweighs its prejudicial effect to
16  the accused; and (2) evidence that any witness has been convicted of a crime shall be admitted if
17  it involved dishonesty or false statement, regardless of punishment." Fed. R. Evid. 609(a).

18  The Ninth Circuit has listed five factors that the district court should balance in making the
19  determination required by Rule 609. United States v. Browne, 829 F.2d 760, 762-63 (9th Cir.
20  1987). Specifically, the court should consider: (1) the impeachment value of the prior crime; (2)

---

[1]  Defendant's criminal history renders him statutorily ineligible for any relief from deportation. First, Defendant is an inadmissible alien. See 8 U.S.C. §1182(a)(6)(A)(I) ("An alien present in the United States without being admitted or paroled, or who arrives in the Untied States at any time or place other than as designated by the Attorney General, is inadmissible"). Second, Defendant is deportable under 8 U.S.C. § 1227 for several reasons – an inadmissible alien is deportable; an alien present in the United States in violation of law is deportable, and an alien convicted of an aggravated felony is deportable. See 8 U.S.C. § 1227(a)(1)(A) & (B) and (a)(2)(A)(iii).

the point in time of the conviction and the witness's subsequent history; (3) the similarity between the past crime and the charged crime; (4) the importance of the defendant's testimony; and (5) the centrality of the defendant's credibility. Id. at 762-63. See also United States v. Hursh, 217 F.3d 761 (9th Cir. 2000).

Here, Defendant has convictions that can be used as Rule 609 evidence. Several of the Browne factors weigh in favor of admitting the conviction to attack Defendant's credibility. First, the impeachment value of Defendant's felony conviction, which shows his disregard for the law, is high. As such, his criminal record would cast doubt on Defendant's credibility should he testify. Second, the importance of Defendant's testimony is crucial in a case such as this, where Defendant would presumably testify if he intends to challenge one of the elements of the offense. For example, if Defendant contends he had permission to be in the United States, his conviction would become relevant. In addition, if Defendant testifies that he had received, or did not need, permission to enter the United States, he would essentially "open the door" to his criminal history, as Defendant's conviction precludes him from receiving permission to enter the United States. Third, because such a challenge could only be developed through Defendant's own testimony, his credibility in asserting such a challenge would be central to the case. Furthermore, whatever risk of unfair prejudice exists can be adequately addressed by sanitizing this convictions and with a limiting jury instruction. Accordingly, the government should be allowed to introduce evidence of Defendant's prior 1994 felony convictions under Rule 609(a) if he elects to testify at trial.

### M. THE COURT SHOULD PROHIBIT COLLATERAL ATTACK OF DEFENDANT'S DEPORTATION

Defendant should not be permitted to argue the lawfulness of his prior deportation to the jury at trial. See United States v. Alvarado-Delgado, 98 F.3d 492 (9th Cir. 1996) (en banc). The lawfulness of the deportation is not an element of the offense under Section 1326, so this issue should not be presented to or determined by a jury. Id. at 493. Moreover, the validity of the deportation should have, if questioned, been raised by Defendant in his pre-trial motions. Defendant should not be permitted to litigate this issue at trial. It would be inappropriate to raise

17

1   this purely legal issue before a jury, which is not tasked with determining the validity of the
2   deportation.

### N.   THE COURT SHOULD ADMIT STATEMENTS OF DEFENDANT

In his post-Miranda statement, Defendant admitted that he is a citizen of Mexico, that he had no legal right to enter the United States, that he had not applied for readmission into the United States, and that he had been previously removed from the United States. Defendant also adopted a signed, written statement to this effect. These statements are admissions of a party opponent admissible under Fed. R. Evid. 801(d)(2). At trial, the government may play portions of this videotape and/or introduce this written statement as relevant to establish the elements of the offense, or for purposes of impeachment. Statements by Defendant are admissions of a party opponent and are admissible under Fed. R. Evid. 801(d)(2).

### O.   RENEWED MOTION FOR RECIPROCAL DISCOVERY

The United States renews its motion for reciprocal discovery. As of the date of the filing of these motions, Defendant has produced no reciprocal discovery. The United States requests that Defendant comply with Rule 16(b) of the Federal Rules of Criminal Procedure, as well as Rule 26.2, which requires the production of prior statements of all witnesses, except for those of Defendant. Defendant has not provided the United States with any documents or statements. Accordingly, the United States intends to object at trial and ask this Court to suppress any evidence at trial which has not been provided to the United States.

### IV
### CONCLUSION

For the foregoing reasons, the government respectfully requests that its motions *in limine* be granted.

//
//
//
//

18

| | |
|---|---|
| 1 | DATED: February 4, 2008. |
| 2 | |
| 3 | Respectfully submitted, |
| 4 | KAREN P. HEWITT<br>United States Attorney |

s/ William A. Hall, Jr.
WILLIAM A. HALL, JR.
Assistant United States Attorney

19